*FOR PUBLICATION*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

In re Majestic Capital, Ltd.,                                    Case No. 11-36225
                                                                 Chapter 11

                    Debtor.


----------------------------------------------------------X


AMENDED MEMORANDUM DECISION DENYING MOTION
FOR ADMINISTRATIVE CLAIM AND
GRANTING MOTION TO REJECT EMPLOYMENT CONTRACT

Appearances:

Thomas Genova
Genova & Malin
1136 Route 9
Wappingers Falls, New York 12590
- and -
Harold Murphy and Andrew Lizotte
Murphy & King, PC
One Beacon Street
Boston, Massachusetts 02108
*Attorneys for Debtors*

William Grossman
Jaeckle Fleischmann & Mugel, LLP
12 Fountain Plaza, Suite 800
Buffalo, New York 14202
*Attorneys for Chester Walczyk*


CECELIA G. MORRIS
UNITED STATES BANKRUPTCY JUDGE

At the hearing on November 15, 2011, the Court heard argument on the Debtors' motion to reject the employment contract of Chester Walczyk, former chief operating officer of the Debtors. Walczyk opposed the motion, and argued that he should be allowed an administrative claim for severance pay, to which he claims he is entitled under his employment contract. The Court denies the motion for the administrative claim pursuant to 11 U.S.C. section 503(c)(2), and grants the motion to reject the employment contract pursuant to the "functional approach" to rejection of executory contracts under section 365.

### *Background*

Debtors commenced their cases on April 29, 2011. Debtors in these jointly administered cases are Majestic Capital, Ltd. ("Majestic Capital," the lead Debtor on the pleadings and the parent company of the group), Majestic USA Capital, Inc. ("Majestic USA"), Compensation Risk Managers, LLC ("CRM"), Compensation Risk Managers of California, LLC ("CRM CA"), Eimar, LLC, and Embarcadero Insurance Holdings, Inc. ("Embarcadero"). Majestic Capital was formerly known as CRM Holdings, Ltd., and wholly owns Majestic USA. *See id.* at 4; Motion by Debtors and Debtors-in-Possession for Authority to Reject Employment Contract With Chester J. Walczyk 3, ECF No. 101. Majestic USA's direct subsidiaries include Embarcadero.  Affidavit Pursuant to Local Bankruptcy Rule 1007-2, ECF No. 3. Embarcadero's wholly owned subsidiary is Majestic Insurance Company

("Majestic Insurance"), a non-debtor undergoing liquidation in a conservatorship proceeding in California. *See* Motion by Debtors and Debtors-in-Possession for Authority to Reject Employment Contract With Chester J. Walczyk 3, ECF No. 101.

The conservator of Majestic Insurance entered into an agreement to sell substantially all Majestic Insurance's assets to AmTrust North America. Motion by Debtors and Debtors-in-Possession for Authority to Reject Employment Contract With Chester J. Walczyk 3, ECF No. 101. The sale was approved by the California court on June 2, 2011, and closed on July 1, 2011. *Id.* Debtors state that one of the purposes of the bankruptcies is to facilitate and support the conservation proceeding so as to preserve a potential surplus for themselves. Affidavit Pursuant to Local Bankruptcy Rule 1007-2 20, ECF No. 3.

On September 28, 2011, Debtors' counsel filed a motion to reject the employment contract of chief operating officer Walczyk, on the grounds that Walczyk was terminated by the conservator of Majestic Insurance on or about July 31, 2011, and his services are not required by the Debtors' estates. Motion by Debtors and Debtors-in-Possession for Authority to Reject Employment Contract With Chester J. Walczyk 3, ECF No. 101. The employment agreement was made on January 1, 2010, between CRM Holdings, Ltd.—the former name of Debtor Majestic Capital—"and its Subsidiaries" and Walczyk, setting a base salary of

$300,000, and severance pay for termination without cause, among other benefits.
Motion by Debtors and Debtors-in-Possession for Authority to Reject Employment
Contract With Chester J. Walczyk Exh. A, ECF No. 101. The employment contract
terminates by its own terms on December 31, 2012. *See id.*

On October 28, 2011, Walczyk filed a motion for allowance of an
administrative claim of $600,000, pursuant to 11 U.S.C. section 503(a), allegedly
for severance pay. *See* Motion By Chester J. Walczyk For Allowance And
Payment Of Administrative Expense 13, ECF No. 148. It appears that Walczyk
seeks to recover under paragraph 9(f)(iii) of the employment contract:

> Termination due to Change in Control. In the event Executive's
> employment is terminated by the Company without cause or by
> Executive for good reason upon the occurrence of or within six months
> following a Change in Control (as defined below), Executive's sole
> remedy under this Agreement shall be to receive:
> . . . .
> iii.   Severance pay equal to 200% of the base Salary immediately
>        prior to the Termination Date (unless a reduction in Base Salary
>        is the reason for Good Reason termination, in which case, the
>        Base Salary amount prior to any such reduction), which
>        severance pay shall be payable in 24 equal monthly payments
>        commencing within 10 days after the effective date of the
>        release provided for in Section 9(i) hereof.

Motion By Chester J. Walczyk For Allowance And Payment Of Administrative
Expense 4, ECF No. 148.

Walczyk notes that on or about May 26, 2011—less than a month after the
present cases were commenced, and two months before Walczyk was terminated—

the Debtors moved to reject the executory employment contracts of two other

employees, the chief executive officer and general counsel of the Debtors,

respectively; in that motion, the Debtors failed to mention Walczyk. Motion By

Chester J. Walczyk For Allowance And Payment Of Administrative Expense 2,

ECF No. 148. Walczyk points out that in that motion, it is stated that employees of

the Debtor were to perform numerous critical functions during the cases, including

supporting the consummation of the sale of the assets of Majestic Insurance in the

conservation proceeding, and assisting the conservator of Majestic Insurance in

evaluating claims against any surplus after the sale. *Id.* Walczyk alleges that he

worked pre- and post-petition with the Majestic Insurance conservator to complete

that sale. *Id.* at 3. He argues that he was an employee of the Debtors, despite a

"paper move" to the payroll of Majestic Insurance—his focus remained that of the

parent-debtor, which was to preserve Majestic Insurance, and the employment

contract was not terminated or amended. *See id.* at 7. Walczyk argues that his

service regarding the sale of Majestic Insurance provided benefit to the Debtors'

estates, as the sale is the only significant generator of revenue for the Debtors. *See*

*id.* at 9. He argues that he is not "double dipping" in both the conservator's

recovery and the Debtors' estates, as the conservator is requiring releases that may

jeopardize any recovery from the bankruptcy estates. *Id.*

Separately, Walczyk opposes the motion to reject his contract, arguing he was terminated on July 29, 2011, and the motion to reject the contract was filed on September 28, 2011. He argues that the contract cannot be rejected because it is not an executory contract—he was terminated by the California conservator after the bankruptcy cases were commenced and before the motion to reject was filed, and there is no performance due on his part. Objection to Motion to Reject Employment Contract of Chester J. Walczyk 4, ECF No. 151. Allegedly, the only part of the agreement yet to be performed is Debtors' payment of Walczyk's severance pay.

Debtors replied to Walczyk's opposition to the motion to reject and opposed his motion for the administrative claim, arguing that during the post-petition period, Walczyk was employed by Majestic Insurance, a non-Debtor, and performed no services for the Debtors. *See* Response to Objection by Chester J. Walczyk to Debtors' Motion to Reject Employment Contract and Objection by Debtors to Motion by Chester J. Walczyk for Allowance and Payment of Administrative Expense 4-5, 6, ECF No. 170. They characterize Walczyk as an employee "in name only," who performed no work post-petition for the Debtors, and they distinguish the former employee's legal authority on the grounds that it concerns employees of Debtors who worked for the Debtors post-petition. *Id.* at 6. Debtors argue that the administrative claim should be barred by 11 U.S.C. section

503(c)(2). *Id.* at 7-8. The Debtors argue that Walczyk's severance benefits are limited to a general unsecured claim under section 502(b)(7). *Id.* at 8.

At the hearing held on November 15, 2011, Debtors' counsel advised the Court that the proceeds of the sale of Majestic Insurance are assets of the present estates—after the claims of Majestic Insurance are satisfied. It was argued that the California conservator of Majestic Insurance was authorized by court order in that proceeding to terminate management, such as Walczyk; this authority was not disputed. Debtors' counsel and Walczyk's counsel agreed that Walczyk was an employee of all the Debtors and Majestic Insurance under the employment contract—though Debtors' counsel argued that Walczyk was not an employee of the Debtors at the time the case was commenced, as his payroll status had been transferred to Majestic Insurance. Debtors alleged that after the present bankruptcy cases were commenced, Walczyk allegedly worked for Majestic Insurance, winding-up East Coast business ahead of the sale—though Debtors' counsel would not admit that Walczyk's services benefitted the present estates. It was agreed that Walczyk was an insider of the Debtors.

### *Statement of jurisdiction*

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Standing Order of Reference signed by Acting Chief

Judge Robert J. Ward dated July 10, 1984.  This is a "core proceeding" under 28

U.S.C. § 157(b)(2)(A) and (B).

### *Part I: The motion for an administrative claim is denied.*

Walcyzk's claim arose upon termination by the conservator. The motion to

reject the contract and the motion for an administrative claim are both

fundamentally concerned with the priority of the claim. The Court commences its

analysis with the motion to allow the administrative claim, as the outcome of that

motion influences the analysis of whether the employment contract may be

rejected under section 365. Walczyk, indisputably an insider, offered no evidence

that his claim meets the requirements of section 503(c)(2), and therefore the

motion for an administrative claim must be denied.

### *A. Insiders' claims for severance pay are not allowed under 11 U.S.C. section 503(c)(2), absent specific statutory requirements.*

> Section 503(b) of the Bankruptcy Code provides as follows:
> (b) After notice and a hearing, there shall be allowed administrative
> expenses … including –
> (1)(A) the actual, necessary costs and expenses of preserving the
> estate including –
> (i) wages, salaries, and commissions for services rendered after the
> commencement of the case…

11 U.S.C. § 503(b). The Second Circuit grants administrative priority to

severance benefits. In *Straus-Duparquet, Inc. v. Local Union No. 3, IBEW*, 386

F.2d 649 (2d Cir. 1967), a Bankruptcy Act case, the bankruptcy referee allowed

claims of union employees for vacation and severance pay, pursuant to a collective

bargaining agreement. The Second Circuit granted administrative status to the

portion of vacation pay that had been earned between the commencement of the

bankruptcy and the termination of the employment, and general unsecured status to

the balance of the vacation pay. Regarding the severance pay, the Second Circuit

determined it to be an administrative claim, stating, "[s]everance pay is not earned

from day to day and does not 'accrue' so that a proportionate part is payable under

any circumstances. After the period of eligibility is served, the full severance pay is

due whenever termination of employment occurs." *Id.* at 651 (2d Cir. N.Y. 1967).

Section 101(31) defines an "insider" as

> . . . . (B) if the debtor is a corporation--
> (i) director of the debtor;
> (ii) officer of the debtor;
> (iii) person in control of the debtor;
> (iv) partnership in which the debtor is a general partner;
> (v) general partner of the debtor; or
> (vi) relative of a general partner, director, officer, or person in control
> of the debtor;
> . . . .
> (E) affiliate, or insider of an affiliate as if such affiliate were the debtor; and
> (F) managing agent of the debtor.

As chief operating officer of "CRM Holdings, Ltd. And its Subsidiaries," *see*

Employment Agreement, which include Debtors and non-debtor subsidiary

Majestic Insurance, Walczyk is admittedly and indisputably an "insider" of the

Debtors for purposes of the Bankruptcy Code.

Section 503 of the Bankruptcy Code limits the status of claims payable to a

Debtor's executives and other insiders, whether in the form of "key employee

retention" benefits, severance pay, or other compensation. Walczyk argues that

section 503(c)(1)(C) (key employee retention incentives) does not apply to his

circumstances, as he was not offered any post-petition inducement to stay—the

severance benefits at issue arise from a pre-petition employment contract. He

argues that the section is meant to apply to Debtors who seek to retain their pre-

existing management, which is different from the circumstances at bar, as he is

seeking the administrative claim on his own initiative.

In the matter at bar, Walczyk requests an administrative claim for severance

pay pursuant to a prepetition employment contract, and the allowance of such a

claim is governed by 11 U.S.C. § 503(c)(2):

> (c) ... there shall neither be allowed, nor paid—
> ...
> (2) a severance payment to an insider of the Debtor, unless—
> (A) the payment is part of a program that is generally applicable to all
> full-time employees; and
> (B) the amount of the payment is not greater than 10 times the amount
> of the mean severance pay given to nonmanagement employees
> during the calendar year in which the payment is made[.]

Courts apply a strict application of section 503(c)(2). In *In re Dana Corp*,

351 B.R. 96 (Bankr. S.D.N.Y. 2006), the court rejected the proposed compensation

plans for certain executives, as the plans did not meet the requirements of section

503(c)(2), among other reasons. In *Dana*, the court rejected the proponents'

arguments that the severance payments were consideration for abiding by non-compete agreements, stating *Straus-Duparquet*'s definition of severance pay as "a form of compensation to alleviate the consequent need for economic readjustment but also to recompense him for certain losses attributable to the dismissal." *Id.* at 102; *cf. Black's Law Dictionary* 1406 (8th ed. 2004) (defining severance pay as "[m]oney (apart from back wages or salary) paid by an employer to a dismissed employee."). The court held that no showing had been made to satisfy the evidentiary burdens set by section 503(c)(2). *Id.* at 103. In *In re Forum Health*, 427 B.R. 650 (Bankr. N.D. Ohio 2010), the court denied a severance payment to the debtor's former chief executive officer, holding, "[d]ebtors' severance program, although generally applicable to all full-time non-union employees, is not generally applicable to all full-time employees." *Id.* at 655. In *Forum Health*, the insider was found to be a participant in the severance benefit program available to non-union employees; as union employees were not covered by the program, the program did not satisfy section 503(c)(2)(A), and the insider's benefit was denied by the bankruptcy court. *See also In re Robb & Stucky Limited, LLLP*, 2011 WL 3948805 (Bankr. M.D. Fla. Sept. 7, 2011) (denying administrative expense claim of the former chief executive officer for severance benefits arising from the post-petition termination of his pre-petition employment agreement).

Persuaded by the foregoing authority, the Court holds that Walczyk's motion for an administrative claim must be denied, as the requirements of section 503(c)(2) are not satisfied. Walczyk is indisputably an insider, and his claim satisfies neither requirement of section 503(c)(2). Walczyk and the contract expressly characterize the payment as severance pay, and no argument has been made that the payment represents another form of compensation that is beyond the scope of section 503(c)(2).  Further, there is no limiting language in section 503(c)(2) that could support an argument that severance payments that are created under individual contracts, as opposed to programs of broader applicability, are beyond the scope of the Code section—the statute simply states, "There shall neither be allowed nor paid a severance payment to an insider of the debtor," unless certain criteria are met. *See* 11 U.S.C. § 503(c)(2). The genesis of the severance payment itself is not limited by the statute, and pre-BAPCPA authority suggests that a claim such as the one at issue would be granted nonpriority status, as a form of damages. *See In re AppliedTheory Corp.*, 312 B.R. 225, 240-241 (Bankr. S.D.N.Y. 2004) (discussed herein).

The Court rejects Walczyk's interpretation of the provision as only applying where the debtor seeks to make the payment, as opposed to the insider seeking it on his own initiative, as no such limiting language is present in the statute. Walczyk characterizes his claim for severance pay, arising pursuant to his

employment contract. The proposed claim arises under Walczyk's personal

employment contract, not a program generally applicable to all employees. As is

amply demonstrated in Debtors' earlier motion to retain the other two insiders,

Walczyk's proposed severance pay—$600,000— exceeds the amount available to

other employees ($9605) by much more than ten times. *See* Motion to Authorize

Debtors to Enter into Severance Program and to Reject Certain Executory

Employment Contracts, ECF No. 31.  Further, Walczyk failed to offer any

evidence that his severance claim met the criteria of section 503(c)(2). Therefore,

his motion for an administrative claim is denied.

  *B. Damages resulting from the rejection of the employment contract are*

*limited by 11 U.S.C. section 502(b)(7).*

      Bankruptcy Code section 502(b)(7) states that if a debtor objects to a claim,

the court shall determine the amount of the claim and allow it, except to the extent

that

> if such claim is the claim of an employee for damages resulting from
> the termination of an employment contract, such claim exceeds—
>   (A) the compensation provided by such contract, without
>   acceleration, for one year following the earlier of—
>       (i)  the date of the filing of the petition; or
>       (ii) the date on which the employer directed the employee to
>       terminate, or such employee terminated, performance under
>       such contract; plus
>   (B) any unpaid compensation due under such contract, without
>   acceleration, or the earlier of such dates. . . . .

Application of section 502(b)(7) is independent of whether a contract is executory—it applies from the earlier of (1) the date of filing the petition or (2) the date the employee was terminated. *Levinson v. LHI Holding*, 176 B.R. 255, 258 (M.D. Fla. 1994). It is irrelevant whether the termination was remote in time or cause to the bankruptcy, and whether the termination occurred as a result of the debtor's worsening financial condition. *See id.* at 259. *See also Anthony v. Interform Corp.*, 96 F.3d 692, 697 (3d Cir. 1996) (holding that section 502(b)(7) caps all employment contract termination claims, regardless of whether the claim was reduced to judgment, there is any connection between termination and debtor's financial troubles, or years passed between termination and the filing of the bankruptcy); *In re Sheehan Mem. Hosp.*, 377 B.R. 63 (Bankr. W.D.N.Y. 2007) (limiting termination damages to those wages that would have been earned in the 60-day notice period for termination; noting that section 502(b)(7) concerns amount of allowed claim, not its priority).

When considering whether to allow an administrative claim for the severance benefit payable to an executive, the Court is persuaded by the reasoning of *In re AppliedTheory Corp.*, 312 B.R. 225 (Bankr. S.D.N.Y. 2004) (Gerber, Bankr. J.). In *AppliedTheory*, five executives sought severance pay of a total of $2.4 million, having provided about six weeks' post-petition services before departing "with good reason." The bankruptcy court distinguished *Straus-*

*Duparquet*: 1) The claim arose from a pre-petition contract that was duly rejected;

2) The claim fails to meet the standard required for an administrative claim; and 3)

The claim in *Straus-Duparquet* concerned severance of two-weeks' pay, in

contrast to a multi-year salary computation that amounted to a "golden parachute."

*Id.* at 2283.

The bankruptcy court described the hallmarks of a "golden parachute": the

claimed entitlements substantially exceed the amount that would have been earned

if the employee remained employed; do not turn on length of service; are not in

lieu of notice; and would be due even upon the employee's decision to quit. *Id.*

In *AppliedTheory*, the executives' post-petition services included work done

related to soliciting bids beyond the stalking horse bids in a 363 sale process, and

ordinary-course activities. The employment contracts were rejected pursuant to the

sale orders. The bankruptcy court held that the provisions of the contract under

which the claims arose set a general unsecured claim, not an administrative claim:

> Here, the Executives and the Debtors fixed amounts in each of their
> contracts—equal to the salary, bonuses (if earned), and current
> fringe benefits—based on their shared perceptions of what the
> Executives' services were worth for as long as they were working.
> …[S]ignificantly, if the Executives did not leave the Debtors'
> employ, they would receive no more. The salary continuation
> (putting aside its doubling or quadrupling) was not an indication of
> the value of their work; it was rather, in substance, a species of
> damages, liquidated  or otherwise (albeit arguably disproportionate
> to any resulting actual damage), for action on the part of the Debtors
> that caused an Executive's regular draw of salary to come to an
> end—either because of a breach of his employment contract by the

> Debtors, or a change in the Executive's working conditions justifying his departure for "Good Reason", or for entering into a transaction with an entity with whom the Executive might not have a future.

*In re AppliedTheory Corp.*, 312 B.R. 225, 240-241 (Bankr. S.D.N.Y. 2004). The court returned to the threshold question of whether an executive's pay should have administrative status: "the extent, if any, to which the salary paid and other benefits then provided fell short of the reasonable value of the services provided by the Executives during their post-petition prerejection tenure with the Debtors." *Id.* at 241.

The court distinguished *Straus-Duparquet*, noting the severance claims in that case were based upon the length of employment, and constituted at most a few weeks' pay. The court found that in *AppliedTheory*, the payments were not meant to avoid hardship, as they were payable even if the executive chose to leave; the payments were different in nature from the severance pay in *Straus*, which was linked to duration of employment, and the *AppliedTheory* executive's pay was a promise of future payment in the event of a contingency. Notably, the court stated,

> [t]he undertaking to pay 'severance' if the Executive chose to quit (if accompanied by the condition of a change of control or other "Good Reason"), or if the Executive was dismissed for other than "Cause," was a pre-petition promise that created a contingent liability on the part of the Debtors to make that payment if the condition was satisfied. Though contingent, it was a claim on the Filing Date. It is basic bankruptcy law that a pre-petition promise to satisfy an obligation upon the happening of a later condition is not transmogrified into a

post-petition obligation when the condition is satisfied post-petition. Instead, it is simply a pre-petition contingent claim.

*In re AppliedTheory Corp.*, 312 B.R. 225, 245 (Bankr. S.D.N.Y. 2004). The court found that the payments in that case, representing a few years' salary, were different in kind than the two-weeks' pay at issue in *Straus. Id* at 246.

Finally, the court denied administrative priority on the grounds that the claims were capped under section 502(b)(7) and the employment contract had been rejected. *See also Mason v. Official Committee of Unsecured Creditors (In re FBI Distribution Corp.)*, 330 F.3d 36, 48 (1st Cir. 2003) (affirming denial of administrative status for executive's purported severance pay, as the pay was really compensation for prepetition act of forgoing other employment; "Mason is entitled to receive the reasonable value of the beneficial services rendered during the reorganization. For these services, she was fully compensated by the Debtor in possession: she received her full salary plus fringe benefits pursuant to the terms of her Employment Agreement for all the services she rendered postpetition. Absent a court approved assumption of her Employment Agreement, this was all she is entitled to receive.").

Similarly, in the matter at bar, the "severance pay" was payable under the employment agreement even if Walczyk chose to leave upon a "change in control." The payment represents 200 percent of base salary, representing compensation for a period of far longer than a few weeks, the kind of severance pay considered in

*Straus*. The payment is different in kind, for the same reasons as stated in

*AppliedTheory*. Any payment that could be allowed from the rejection of the

agreement is limited by 502(b)(7).

The Court finds that Walczyk was an employee of the Debtors, post-petition.

His employment contract is titled "CRM Holdings, Ltd. and its Subsidiaries/

Employment Agreement for Chester J. Walczyk;" and it is made between Walczyk

and CRM "together with its subsidiaries from time to time." The Court rejects the

Debtors' argument that Walczyk ceased to be an employee of the Debtors when his

payroll was switched to Majestic Insurance. Debtors' indirect subsidiaries include

Majestic Insurance. It is irrelevant to the questions at bar which subsidiary paid the

payroll, in the face of such a broad employment agreement.

Section 502(b)(7) does not conflict with section 503(c)(2). "Where Congress

includes particular language in one section of a statute but omits it in another

section of the same Act, it is generally presumed that Congress acts intentionally

and purposely in the disparate inclusion or exclusion." *Kucana v. Holder*, 130 S.

Ct. 827, 838 (2010); *see also Air Transp. Ass'n of Am. v. Prof'l Air Traffic

Controllers Org.*, 667 F.2d 316, 321 (2d Cir. 1981) (noting that a court may

presume that Congress is aware of settled judicial construction of existing law).

When Congress added section 503(c)(2) in enacting the BAPCPA amendments, it

did not revisit section 502(b)(7). Given that Congress is presumed to have known

about both sections, the Court holds that the limitation of section 503(c)(2) denies administrative *priority* of the claim for severance pay, whereas section 502(b)(7) controls the *amount* of the allowed claim. Section 503(c)(2) exists under a Code section titled, "Allowance of administrative expenses;" subsection (c) commences with the clause, "Notwithstanding subsection (b)," which concerns "allowed administrative expenses;" and section 503(c)(2) expressly references severance pay to insiders. *See* 11 U.S.C. § 503(c); *In re Dana Corp.*, 358 B.R. 567, 578 (noting that section 503(c) on its face limits the allowance and payment of administrative claims). In contrast, section 502(b) is captioned, "Allowance of claims or interests," without reference to the priority of claims. *Cf.* 11 U.S.C. § 507(a)(3) (establishing priority of specific subsection of section 502(b)). Further, section 502(b)(7) concerns "employees," and contemplates damages arising from "termination" of an employment contract. Therefore, the Court interprets the two provisions as not allowing an administrative claim for severance pay unless it meets the requirements of section 503(c)(2), while allowing at least the opportunity to argue that a claim may be asserted for the termination of the contract.

The motion for the administrative claim is denied, but Walczyk may still file a claim for damages related to the rejection of the employment agreement, which will be capped by section 507(b)(7).

***Part II: The employment contract is rejected, as rejection is in the best
interests of the estate.***

> Section 365(a) governs the assumption or rejection of "any
> executory contract or unexpired lease" of the Debtor. The significance
> of rejection of an executory contract is that it not only relieves the
> estate of burdensome future obligations but it also gives rise to a
> prepetition general unsecured claim for damages rather than an
> administrative expense priority.

> The option to assume or reject is limited to contracts that are
> executory. Although not defined by the Code, the definition proffered
> by Professor Vern Countryman is widely accepted, to wit, a contract
> is executory for purposes of applying section 365 if the "obligations
> of both the bankrupt and the other party to the contract are so far
> unperformed that the failure of either to complete performance would
> constitute a material breach excusing performance of the other."

*In re Spectrum Info. Techs.*, 193 B.R. 400, 403-404 (Bankr. E.D.N.Y. 1996)

(citations omitted). The Second Circuit has not adopted the *Countryman* definition

of an executory contract; it has characterized such a contract as one on which

performance remains due to some extent on both sides. *In re Penn Traffic Co.*, 524

F.3d 373 (2d Cir. 2008) (citing *Eastern Air Lines, Inc. v. Ins. Co. of Pa. (In re

Ionosphere Clubs, Inc.)*, 85 F.3d 992, 998-99 (2d Cir.1996). Executoriness

normally is measured as of the petition date, yet post-petition events may occur

that render an executory contract non-executory. *In re Penn Traffic Co.*, 524 F.3d

at 381. "The standard to be applied [to whether an executory contract should be

rejected] hinges on the exercise of the debtor's business judgment." *In re Child

World*, 147 B.R. 847, 850 (Bankr. S.D.N.Y. 1992).

Employment contracts that are terminated post-petition present a special challenge for Second Circuit courts, as severance pay is awarded high priority, and rejection damages are treated as general unsecured claims. *Compare Straus-Duparquet, Inc. v. Local Union No. 3, IBEW*, 386 F.2d 649 (2d Cir. 1967) (granting administrative status to severance pay) *with* 11 U.S.C. 365(g)(1) (stating that rejection of a contract constitutes a breach immediately before the filing date). On a motion to reject a terminated employment contract, courts focus their analyses on whether the contract is "executory" for purposes of section 365(a).

In *In re Spectrum Information Technologies, Inc.*, 193 B.R. 400 (Bankr. E.D.N.Y. 1996), Debtor hired a president for one of its subsidiaries, about eight months before the subsidiary stopped doing business and filed its own bankruptcy case. After the subsidiary filed its bankruptcy, Debtor and the president continued the employment, with the president helping the Debtor with other aspects of its businesses. About two months after the Debtor and the subsidiary commenced their cases, the president was terminated, with several months yet remaining under the employment agreement. Subsequently, the Debtor moved to reject the employment contract.

The bankruptcy court determined that the contract was not executory, as the only remaining obligation was the Debtor's obligation to pay the president severance. Regarding the priority of the claim for severance pay, the court noted,

"employment-related benefits such as severance and vacation pay have been deemed to be forms of 'wages' which may be entitled to administrative expense priority if incurred during the administration of a bankruptcy case." *Id.* at 405. *See also In re CPC Health Corp.*, 81 Fed. Appx. 805 (4th Cir. 2003) (affirming denial of motion for rejection damages, as termination of employee ended employee's obligation to perform); *but see In re Child World*, 147 B.R. 847, 852 (Bankr. S.D.N.Y. 1992) (holding that terminated employment contracts were executory and stating that "[t]he debtor is obligated under the contracts to make salary continuation payments and the employees are required to release the debtor of all claims for compensation and to use their best efforts to seek suitable employment in mitigation of the compensation to which they are entitled.").

"[T]he Second Circuit holds that the right to severance pay arises on the date of termination and that the entire amount is entitled to administrative expense priority under section 507(a)." *In re Spectrum Information Technologies, Inc.*, 193 B.R. at 405 (citing *In re W.T. Grant Co.*, 620 F.2d 319 (2d Cir.) cert. denied, 446 U.S. 983, 100 S.Ct. 2963, 64 L.Ed.2d 839 (1980)). The *Spectrum* court allowed the full amount of severance pay as an administrative claim:

> By seeking Marchione's continued employment post-petition, Spectrum received the benefits of his expertise and services during the administration of the estate. Although Marchione was duly paid for his services, under the terms of the Employment Agreement, the value of the benefits conferred by Marchione included the indirect compensation of severance payments which, as suggested by the

> Second Circuit, is intended to compensate employees for the hardships attributable to termination and is earned when the employee is dismissed.

*Spectrum*, 193 B.R. at 407. *But see Trustees of Amalgamated Ins. Fund v.*

*McFarlin's, Inc.*, 789 F.2d 98 (2d Cir. 1986) (holding "withdrawal liability"

regarding union pension and benefit plans was a general unsecured claim; the

liability arose during a pre-petition period based on the consideration of the

employees' labor in that time, and therefore could not be said to have been

incurred for the benefit of the estate's creditors). Walczyk cites *Spectrum* for the

proposition that employee-related benefits such as severance and vacation pay

have been deemed wages that may be entitled to administrative priority under

section 503(b)(1)(A) if incurred during the administration of a bankruptcy case.

Bankruptcy courts in this district sometimes apply the "functional approach"

in determining whether a contract may be rejected under section 365. "Under the

functional approach the issue is not whether or not the contract is executory but

rather whether or not the estate will benefit from the assumption or rejection of the

contract." *In re Child World*, 147 B.R. at 851. In *In re Drexel Burnham Lambert*

*Group, Inc.*, 138 B.R. 687 (Bankr. S.D.N.Y. 1992) (Conrad, Bankr. J.), the court

rejected a strict application of the *Countryman* test for "executoriness," and held

that an executive who had been terminated post-petition was not entitled to

"severance pay" pursuant to the employment contract. The court parsed the

reasoning underlying the *Countryman* definition and subsequent scholarship, and

determined that the purpose of the trustee's power to assume or reject executory

contracts is to bring benefit to the estate. *See, e.g., id.* at 704 ("The material breach

test is *Countryman*'s effort to ensure that the trustee's right to assume or reject is

indeed an option to be exercised when it will benefit the estate and which does not

extend to situations where the only effect of its exercise would be to prejudice

other creditors of the estate.") (citation omitted). The court adopted a four-part

analysis:

1. the trustee determines whether the contract gives to the non-Debtor party
   an enforceable interest in property of the Debtor that has passed to the
   estate, such as a security interest;

2. the trustee determines whether any such interest is avoidable under the
   trustee's avoiding powers;

3. If there is no interest as is described in No. 2, or if it is avoidable, then
   the trustee will determine whether the estate will benefit more from
   breach and payment of the claim in "tiny Bankruptcy Dollars" (a general
   unsecured claim) or by performance;

4. If the non-Debtor party has an unavoidable interest, the trustee must
   determine whether the estate will benefit most from breach or
   performance.

*Id.* at 709.

    If the Court were to apply the "functional" approach adopted by the *Drexel*

*Burnham* court, "breach" of Walczyk's contract would be in the best interest of the

estate. Walczyk has filed an administrative claim for the severance pay; he has not

argued that he has any interest in property of the Debtor that passed to the estate.

The trustee has determined that breach would be better than performance, as

Walczyk's services are not required by these estates.

The criticism of the *Drexel Burnham* reasoning is that it minimizes the

statutory limitation of section 365 to contracts that are "executory." *See Child

World*, 147 B.R. at 851. If only executory contracts may be rejected, then it follows

that there must be "non-executory" contracts that are beyond the scope of section

365. In the matter at bar, the California conservator terminated Walczyk, and the

parties agree that such an act is within his authority. As a result, Walczyk does not

owe any further performance to the Debtors. Therefore, under the *Countryman*

definition, the employment contract is not executory.

In a district that follows both the *Countryman* test and the functional

approach, *see In re Child World*, 147 B.R. at 852 and *In re Worldcom, Inc.*, 2010

WL 2465362 at *5 (Bankr. S.D.N.Y. June 11, 2010), the Court holds that the

functional approach should be applied to allow the rejection of the present

employment contract. The severance benefit in the matter at bar is more similar to

*Drexel Burnham* than *Spectrum*, and, in a post-BAPCPA world, the outcome of

*Drexel Burnham* is more easily reconciled to section 503(c)(2)'s limitation on

insiders' severance pay. As discussed in Part I, the Bankruptcy Code simply

forbids Walczyk an administrative claim for the severance pay, and limits all

damages arising from the termination of the employment contract. Much of the

authority concerning rejecting executives' contracts—and the attendant effect on

the executives' claims—pre-dates section 503. Nowadays, the question is less

about the status of the contract and more about defining the employee's claim—if

the employee has been terminated and cannot be paid a contractual benefit, then

how does the debtor dispose of the contract and define the employee's claim? The

riddle is solved by rejection pursuant to section 365, the Code's mechanism for

eliminating contracts that are burdensome to the estate, authorized by the

functional approach to executoriness. *See  In re Child World*, 147 B.R. at 852

("Rejection is not the equivalent of rescission because rejection under 11 U.S.C. §

365(a) simply means that the court will permit the debtor to breach the contract,

with the result that the contractual obligations will be reduced to general unsecured

claims for prepetition damages pursuant to 11 U.S.C. § 365(g)(1).").

Further, while the parties do not dispute the California conservator's

authority to terminate Walczyk, the termination was not performed by an officer of

these bankruptcy estates, and was not done in the exercise of the Debtors' business

judgment. The conservator's act has deprived the Debtors of an officer and resulted

in a claim against their estates. These decisions are usually made by debtors-in-

possession, as part of the overall strategy of the bankruptcy. Indeed, in

*AppliedTheory*, the executives performed significant work related to the

bankruptcy before their contracts were rejected. *See In re AppliedTheory Corp.*,

312 B.R. at 233-34. In the matter at bar, in light of the amorphous relationship

between the Debtors and Majestic Insurance, and the entanglement of the claims

allowance process of the bankruptcies with the conservation proceeding, it is

imperative that the autonomy of the present estates be maintained. The Court

grants the motion to reject, as it represents a decision made by the Debtors in their

business judgment that the contract should not be assumed. *See In re Old Carco

LLC*, 406 B.R. 180, 193 (Bankr. S.D.N.Y. 2009) (stating rule that court's inquiry

was limited to whether the rejection will benefit the debtor's estate, under the

business judgment standard).

## CONCLUSION

Walczyk's motion for an administrative claim for "severance" pay is denied,

as it does not meet the requirements of section 503(c)(2). The Court grants

Debtors' motion to reject the contract, as to hold otherwise would thwart the

policies of the Bankruptcy Code and circumvent the goal of section 365—that a

debtor should be relieved of burdensome agreements of no value to the estate.

Counsel to the Debtors shall submit orders in accordance with this decision.

Dated: January 9, 2012
Poughkeepsie, New York

*/s/ Cecelia G. Morris*
United States Bankruptcy Judge